IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-03495-PAB-MEH

DARUS WILKINS,

    Plaintiff,

v.

JOHN PALOMINO,
CHRIS CHAVEZ,
KARA KENNEDY,
BRENT PIERCE,
LUKE HOLLAND,
DR. THIELY,
MS. DILLMAN,
JANE GILDEN, in their individual and official capacities,
VIRGINIA FREED, in her individual capacity, and
MR. SMITH, in his official capacity,

    Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court is Defendant Virginia Freed's "Motion for Summary Judgment" ("Motion"). ECF 110. The Motion is fully briefed and has been referred to this Court by Chief Judge Philip A. Brimmer for a recommendation. ECF 111. For the reasons that follow, the Court respectfully recommends that the Motion be granted.

### BACKGROUND

Plaintiff is a prisoner currently housed at Colorado Territorial Correctional Facility, who initiated this action on November 25, 2020 for events that occurred while he was a prisoner at Bent County Correctional Facility ("BCCF"). ECF 1. On December 17, 2020, pursuant to an order from

Magistrate Judge Gordon P. Gallagher (ECF 5), Plaintiff filed an Amended Complaint. ECF 8. On June 24, 2021, Plaintiff filed his Second Amended Complaint. ECF 64. Finally, on September 9, 2021, Plaintiff filed the operative Third Amended Complaint ("TAC"), alleging various constitutional and state law violations against prison officials concerning the taking of a buccal swab for a paternity test. ECF 104. Ms. Freed now moves for summary judgment, arguing she is entitled to qualified immunity on Plaintiff's constitutional violation claims, and that the Colorado Governmental Immunity Act ("CGIA") bars his state law claims. ECF 110.

## **STANDARDS OF REVIEW**

### I.  Summary Judgment

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). A court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the moving party has the burden of proof—the plaintiff on a claim for relief or the defendant on an affirmative defense—his[, her, or its] showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015) (quoting *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986)). "In other words, the evidence in the movant's favor must be so powerful that no reasonable jury would be free to disbelieve it. Anything less should result in denial of summary judgment." *Id.* at 1154

(quoting 11 Moore's Federal Practice, § 56.40[1][c] (Matthew Bender 3d Ed. 2015)). Only evidence for which the content and substance are admissible may be considered when ruling on a motion for summary judgment. *Johnson v. Weld Cty., Colo*., 594 F.3d 1202, 1210 (10th Cir. 2010).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in his complaint but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."); *see also Hysten v. Burlington N. & Santa Fe Ry*., 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324); *see Mountain Highlands, LLC v. Hendricks*, 616 F.3d 1167, 1170 (10th Cir. 2010) ("On those issues for which it bears the burden of proof at trial, the nonmovant "must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [its] case in order to survive summary judgment.") (quoting *Cardoso v. Calbone*, 490 F.3d 1194, 1197 (10th Cir. 2007)). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc*., 431 F.3d 1241, 1255 (10th Cir. 2005).

**II.     Treatment of Pro Se Pleadings**

A pro se plaintiff's "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Garrett v. Selby Connor Maddux & Janer*,

3

425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). "Th[e] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (quoting *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997)). The Tenth Circuit interpreted this rule to mean, if a court "can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, [it] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013) (quoting *Hall*, 935 F.2d at 1110). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Garrett*, 425 F.3d at 840 (quoting *Hall*, 935 F.2d at 1110).

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. On August 27, 2018, the Adams County Attorney's Office filed a dependency and neglect case, No. 18JV279, in Adams County District Court. ECF 110-1, Exh. A, Gipson Aff. ¶ 3.

2. Plaintiff was named as a respondent father and potential biological father of the minor child in 18JV279. *Id.*; ECF 110-2, Exh. B, Thomerson Aff. ¶ 2.

3. On May 2, 2019, Plaintiff's court-appointed attorney filed an unopposed motion for genetic testing to determine paternity. Exh. A, ¶ 5; Exh. B, ¶ 3.

4. In the motion, Plaintiff's attorney included language that the paternity testing was to be "completed at Jefferson County Detention Facility by May 20, 2019." Exh. A, ¶ 6; Exh. B, ¶ 4.

5. The court adopted this language in the order granting the motion for genetic testing to determine paternity, entered on May 9, 2019. Exh. A, ¶ 7; Exh. B, ¶ 5; ECF 110-3, Exh. C, Order.

6. Based on experience in working on these types of cases, Adams County Attorney's Office officials believed that the date in Plaintiff's testing order was aspirational, not a deadline that terminated the order. Exh. B., ¶ 6.

7. In other words, the Adams County Attorney's Office understood the order to remain valid until testing was completed. Exh. B, ¶ 7.

8. As the party who requested the testing, Plaintiff's attorney was responsible for providing the order to the Adams County Attorney's Office so that a request could be made to LabCorp to arrange for collection of his DNA sample. Exh. A, ¶ 8.

9. The order was not provided to the Adams County Attorney's Office until shortly before May 28, 2019, at which time Dori Gipson, a legal assistant, submitted the court order and testing request to LabCorp. *Id.* ¶ 9.

10. The court had set a hearing in the dependency and neglect case in which Plaintiff had requested and obtained the order for genetic testing for July 9, 2019. *Id* ¶ 12; Exh. B, ¶ 10.

11. At the hearing, the court noted that Plaintiff's genetic testing had not been completed and set a new hearing for September 6, 2019. Exh. A, ¶ 12; Exh. B, ¶ 10.

12. This conformed with the Adams County Attorney's Office's understanding that the order for genetic testing to determine paternity remained valid until testing was completed. Exh. B, ¶¶ 12–13.

13. By the time of the hearing held on September 6, 2019, Plaintiff's paternity DNA sample had been collected and processed. *Id.* ¶ 11.

14. The results established that Plaintiff was not the father of the minor child, and the court dismissed Plaintiff from the case. *Id.*; Exh. A, ¶ 13.

15.     Ms. Freed is a child support technician employed by the Bent County Department of Social Services. ECF 110-4, Exh. D, Freed Aff. ¶¶ 1–2.

16.     Ms. Freed would perform court-ordered DNA collections for paternity testing at no charge. These requests originated with counties entering court-ordered collections with LabCorp. *Id.* ¶¶ 8, 11.

17.     These requests would come to Ms. Freed via BCCF after BCCF received notice from LabCorp, a testing laboratory, of the court-ordered collection entered by a county department. *Id.* ¶¶ 8–11.

18.     Following a court's entry of an order for genetic testing to determine paternity, counties locate the individual and submit a request for DNA collection to LabCorp. *Id.* ¶¶ 7–8.

19.     In cases where the individual is located at BCCF, LabCorp directs the request to BCCF and BCCF delivers the request to the facility's medical unit. *Id.* ¶ 10.

20.     The BCCF medical unit would contact Ms. Freed to collect the sample. *Id.* ¶ 11.

21.     On July 12, 2019, Ms. Freed received a call from Nita Hunt at BCCF requesting a courtesy court-ordered collection for Plaintiff. *Id.* ¶ 13.

22.     On July 16, 2019, Ms. Freed went to BCCF per the appointment with Ms. Hunt. *Id.* ¶ 14.

23.     When Ms. Freed arrived at BCCF, Ms. Hunt provided her with the testing package from LabCorp, which included a copy of the Adams County District Court order for genetic testing to determine paternity. *Id.* ¶¶ 12, 15.

24.     Plaintiff advised that he wished to speak with his attorney before providing a sample. *Id.* ¶ 16.

25.     Ms. Freed suggested they reschedule the collection and set an appointment for July 25, 2019. *Id.* ¶ 17.

26. On July 25, 2019, per the appointment made on her prior visit, Ms. Freed returned to BCCF. *Id.* ¶ 19.

27. At BCCF, staff asked Ms. Freed if she would be willing to see Plaintiff on his cell block, to which she agreed. *Id.* ¶ 20.

28. On the cell block, Ms. Freed observed Plaintiff walking with officers from his cell to the unit manager's office. *Id.* ¶ 21.

29. Plaintiff was in handcuffs but walking on his own power. *Id.* ¶ 22.

30. Ms. Freed waited outside the unit manager's office with Ms. Hunt and other corrections officers until she was invited to enter in order to perform the collection procedure. *Id.* ¶ 23.

31. When Ms. Freed entered the unit manager's office, Plaintiff was lying with his chest on the floor. *Id.* ¶ 25.

32. Ms. Freed asked Plaintiff the questions on the collection form and he answered. *Id.* ¶ 26.

33. Ms. Freed then took a total of four buccal swabs, two from each side of Plaintiff's mouth, while he remained on the floor. *Id.* ¶ 27.

34. After Ms. Freed swabbed the left side of Plaintiff's mouth, he turned his head so she could swab his right side. *Id.* ¶ 28.

35. Plaintiff did not bite, yell, turn away, or otherwise resist the swabs. *Id.* ¶ 29.

36. When Ms. Freed completed the swabs, she asked the corrections officers in the room to assist Plaintiff to his feet so she could complete the collection procedure. *Id.* ¶ 30.

37. Once the officers helped Plaintiff up, Ms. Freed took his photograph. *Id.*

38. Plaintiff signed the collection documents and provided a right thumb print. *Id*. ¶ 31; ECF 101-5, Exh. E, LabCorp Submission and Chain of Custody Form.

## ANALYSIS

Of the many constitutional violations Plaintiff alleges in his TAC, only three concern Ms. Freed: (1) false arrest; (2) unlawful search and seizure; and (3) deprivation of property. Plaintiff also brings various state claims against Ms. Freed. On the constitutional violations, Ms. Freed asserts the defense of qualified immunity. On the state law claims, she argues they are barred by the CGIA. The Court will first address Plaintiff's constitutional claims before turning to the state law claims.

**I.    Federal Claims**

The doctrine of qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Because qualified immunity is an immunity from suit, rather than a mere defense to liability, it is effectively lost if a case is erroneously permitted to go to trial.  *Id*. at 231; *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) ("The privilege is an immunity from suit rather than a mere defense to liability.").  The "driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery." *Pearson*, 555 U.S. at 231–32 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987)).  Accordingly, qualified immunity questions must be resolved at the earliest possible stage in litigation." *Id*. at 232.

When a defendant asserts qualified immunity, the plaintiff has a two-fold burden to overcome the asserted immunity: (1) "rebut the [defendant's] no-constitutional-rights arguments" and (2) "demonstrate that any constitutional violation was grounded in then-extant clearly established law." *Cox v. Glanz*, 800 F.3d 1231, 1245 (10th Cir. 2015) (citing *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009)); *see also Felders v. Malcom*, 755 F.3d 870, 877–78 (10th Cir. 2014) ("[T]he 'record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity.'" (quoting *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001))). An official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). To satisfy the clearly established prong of the test, the Tenth Circuit requires that "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010).

Traditionally, there has been a two-step process for resolving qualified immunity questions: "First, a court must decide whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right. . . . Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (quoting *Saucier v. Katz*, 533 U.S. 194 (2001) (internal citations and quotation marks removed)). However, the Supreme Court has afforded courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*. at 236; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

### A. False Arrest

Plaintiff seeks to hold Ms. Freed liable for a violation of his Fourth Amendment rights under a theory of false arrest. To succeed on that claim, Plaintiff must establish the common law elements of false arrest. *Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir. 1996); *see also Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (analyzing Section 1983 claim under New York's law). Under Colorado law, a claim for false arrest requires that the Plaintiff show that (1) Ms. Freed intended to restrict his freedom of movement; (2) his freedom of movement was restricted for a period of time, however short, either directly or indirectly by an act of Ms. Freed; and (3) he was aware that his freedom of movement was restricted. *Goodboe v. Gabriella*, 663 P.2d 1051, 1055–56 (Colo. App. 1983).

Based on the record in this case, Plaintiff cannot establish that Ms. Freed intended (or did) restrict his freedom of movement. When Ms. Freed returned to BCCF on July 25, 2019, she observed Mr. Wilkins walking with officers from his cell to the unit manager's office. Exh. D, ¶¶ 19, 21. She waited outside the unit manager's office until she was invited to enter. *Id.* ¶ 23. When Ms. Freed entered the unit manager's office, Mr. Wilkins was lying on the floor. *Id.* ¶ 25. Ms. Freed then took a total of four buccal swabs while he remained on the floor. *Id.* ¶ 27. These actions do not demonstrate an intent by Ms. Freed to impede Plaintiff's freedom of movement. She merely obtained buccal swabs pursuant to a court order for genetic testing. *Id.* ¶¶ 3–5, 12. She neither restrained Plaintiff herself nor directed that any officer restrain him. As a result, there is no genuine dispute of fact that Ms. Freed lacked the requisite intent to establish a Fourth Amendment violation for false arrest. Thus, Ms. Freed should be granted summary judgment on this claim.

B.  **Unlawful Search and Seizure**

Plaintiff also more generally alleges a violation of his Fourth Amendment right to be free from unlawful searches and seizures. In his response, Plaintiff describes this claim in terms of Ms. Freed's use of force in obtaining the buccal swabs since he refused to provide it willingly. ECF 137 at 3. The Supreme Court has recognized that a "buccal swab on the inner tissues of a person's cheek in order to obtain DNA samples is a search" for purposes of the Fourth Amendment. *Maryland v. King*, 569 U.S. 435, 446 (2013). However, Plaintiff has not pointed to clearly established law that a child support technician collecting a DNA sample to determine paternity pursuant to a court order violates that person's Fourth Amendment rights when the person declines to provide the sample.

The Tenth Circuit has unambiguously emphasized that it is a plaintiff's burden to cite to cases that satisfy the burden of demonstrating the asserted law is clearly established. *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010) ("The plaintiff bears the burden of citing to us what he thinks constitutes clearly established law."); *see also Gutierrez v. Cobos*, 841 F.3d 895, 903 (10th Cir. 2016) ("Plaintiffs failed to carry their burden of showing that [the defendants] violated clearly established federal law because their counsel did not make any legal argument in the district court to rebut qualified immunity."); *Rojas v. Anderson*, 727 F.3d 1000, 1004 (10th Cir. 2013) (finding that, although the plaintiff "might well have been able to satisfy us that Defendants' actions violated his clearly established rights," the plaintiff "through his counsel, [has simply] failed to carry the burden assigned to him by law."); *Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013) ("[The plaintiff], through his counsel, failed to carry the burden assigned him by law."). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016). For the law to be clearly

established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must support the position. *Doe v. Woodard*, 912 F.3d 1278, 1289 (10th Cir. 2019), *cert. denied sub nom.*, *I.B. v. Woodard*, — U.S. —, 139 S. Ct. 2616 (2019); *Quinn*, 780 F.3d at 1005.

"The question is not whether there is a prior case with precisely the same facts, but 'whether the law put officials on fair notice that the described conduct was unconstitutional.'" *Mayfield v. Bethards*, 826 F.3d 1252, 1258 (10th Cir. 2016) (citation omitted). The Tenth Circuit has "cautioned that defining a right too narrowly risks making recovery against a public official virtually impossible because only 'those rare cases in which a precedential case existed which was 'on all fours' factually with the case at bar' would abrogate qualified immunity." *Id.* (citation omitted). On the other hand, the Supreme Court has "repeatedly told courts not to define clearly established law at a high level of generality since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Est. of B.I.C. v. Gillen*, 761 F.3d 1099, 1106 (10th Cir. 2014) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)). "[S]pecificity is especially important in the Fourth Amendment context, where . . . it is sometimes difficult for an [official] to determine how the relevant legal doctrine . . . will apply to the factual situation the [official] confronts." *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)).

In his response, Plaintiff cites to *Hudson v. McMillian*, 503 U.S. 1, 5–6 (1992) and *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986). Both cases concern claims under the Eighth Amendment for excessive force used by prison officials. Neither concern the use of force in the context of buccal swabs taken pursuant to a court order. Nor does either case concern an incident in which a

buccal swab is taken after the date provided in the order authorizing the buccal swab.[1] The Court finds that Plaintiff has not cited "existing precedent [that] '*squarely governs*' the specific facts at issue." *Kisela v. Hughes*, — U.S. —, 138 S. Ct. 1148, 1153 (2018).

The Court is mindful that the Tenth Circuit's admonition that a plaintiff bears the burden of citing to the Court clearly established law, *see Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010), typically involves plaintiffs who are represented by counsel. *See, e.g.*, *Gutierrez v. Cobos*, 841 F.3d 895, 903 (10th Cir. 2016); *Rojas v. Anderson*, 727 F.3d 1000, 1005-06 (10th Cir. 2013); *Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013). However, the Tenth Circuit has reversed a trial court's dismissal of a pro se plaintiff's excessive force claim—where the trial court found the plaintiff had failed to identify a case demonstrating his right was clearly established— by itself pointing to a Supreme Court case sufficiently similar to the facts alleged and finding the plaintiff's right was clearly established. *See Ali v. Duboise*, 763 F. App'x 645, 651–52 (10th Cir. 2019). Therefore, the Court has conducted an additional inquiry to determine whether the relevant law was clearly established as of the dates of these events, finding no authority[2] concluding that a child support technician who collects a DNA sample to determine paternity pursuant to a court

---

[1] Plaintiff also alleges a violation of his rights based on Ms. Freed mishandling a prior refusal form he signed. But Plaintiff's cited cases do not concern that scenario either. Plaintiff has failed to cite clearly established law as to any possible Fourth Amendment violation that occurred.

[2] The Court notes that it did find *Brown v. Upper Darby Police Dep't*, 2021 WL 2948833 (3d Cir. July 14, 2021). In that case, the plaintiff challenged officers' use of force in collecting a buccal swab. *Id.* at *3. The Third Circuit analyzed that claim under the Fourth Amendment's objective reasonableness test. *Id.* However, unlike this case, the Third Circuit confronted a situation in which the buccal swab was not for purposes of paternity, and the defendants used physical force to obtain the buccal swab. *Id.* Here, Ms. Freed did not engage in any activity to restrain or force Plaintiff to receive the buccal swab. In addition to these material, factual differences, *Brown* is not a Tenth Circuit or Supreme Court case and thus cannot, alone, constitute clearly established law. Further, *Brown* was not decided prior to the events that took place in this case.

order violates that person's Fourth Amendment rights when the prisoner declines to provide the sample. Absent this clearly established law, Defendant is entitled to qualified immunity.

### C. Deprivation of Property

Plaintiff alleges a deprivation of his property in violation of the Fourth or Fourteenth Amendment. Again, though, Plaintiff fails to cite a case establishing a violation of a clearly established right. At Plaintiff's request, a court order from Adams County provided for the collection of Plaintiff's DNA for a paternity test. Exh. A, ¶¶ 5–7; Exh. B, ¶¶ 3–5. Although the date on the court order had passed when the buccal swab was taken, the state court accepted the results of the test and dismissed Plaintiff from its case. Exh. A, ¶ 13; Exh. B, ¶¶ 12–13. Plaintiff has not cited, and the Court has not found, a case that "squarely governs" these facts.[3] Therefore, the Court incorporates its earlier analysis on clearly established law here.

"Once the qualified immunity defense is asserted, the plaintiff 'bears a heavy two-part burden' to show, first, 'the defendant's actions violated a constitutional or statutory right,' and, second, that the right was 'clearly established at the time of the conduct at issue.'" *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (quoting *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008)). It is therefore Plaintiff's burden to overcome qualified immunity on his Section 1983 claims. Because he has not done so, the Court respectfully recommends finding Ms. Freed is entitled to qualified immunity and granting summary judgment on those claims.

---

[3] Ms. Freed cites to *Boling v. Romer*, 101 F.3d 1336 (10th Cir. 1996) for her argument that there was no constitutional violation here even if the law was clearly established. There, the Tenth Circuit held that a Colorado statute requiring inmates convicted of an offense involving sexual assault to provide a DNA sample prior to being released on parole did not violate the Constitution. *Id.* at 1340–41. In doing so, the court noted that "equally unpersuasive are plaintiff's arguments that defendants unconstitutionally deprived him of a property interest in his blood without due process or just compensation." *Id.* Although this is persuasive as to the lack of a constitutional violation, because the Court finds no clearly established law, it does not reach the issue of whether there was in fact a constitutional violation.

**II.     State Law Claims**

Plaintiff alleges several state tort claims against Ms. Freed, including (1) negligence, (2) sexual assault, (3) intentional torts, and (4) outrageous conduct. Ms. Freed argues that these claims are barred by the CGIA. Plaintiff disagrees, arguing that Ms. Freed exceeded the scope of her duty. For the following reasons, the Court agrees with Ms. Freed.

The CGIA provides that "[a] public employee shall be immune from liability in any claim for injury . . . which lies in tort or could lie in tort . . . and which arises out of an act or omission of such employee occurring during the performance of his duties and within the scope of his employment unless the act or omission causing such injury was willful and wanton." Colo. Rev. Stat. § 24-10-118(2)(a). Pursuant to Colo. Rev. Stat. § 24-10-106, there are exceptions to this immunity for injuries resulting from specific conditions. For example, injuries resulting from the "operation of a motor vehicle . . . by a public employee while in the course of employment." *Id.* § 24-10-106(1)(a).

In this case, Plaintiff's claims sound in tort. Further, none of the claims fall under an enumerated exception in Section 24-10-106. Plaintiff's sole argument for why CGIA immunity does not apply is that Ms. Freed acted outside the scope of her employment.[4] However, the undisputed facts in this case belie that contention. Ms. Freed is a child support technician employed

---

[4] Although Plaintiff does not make this argument, the Court notes that the CGIA also provides an exception for actions or omissions which are willful and wanton. "[T]he Colorado Supreme Court has found informative a case defining 'willful and wanton' as 'wholly disregardful of the rights, feelings and safety of others . . . at times even imply[ing] an element of evil.'" *Robinson v. Jefferson Cnty. Sch. Dist. R-1*, 2021 WL 5329421, at *9 (D. Colo. Nov. 16, 2021) (quoting *Moody v. Ungerer*, 885 P.2d 200, 205 (Colo. 1994)). Although "[w]hether an individual 's conduct was willful and wanton is generally a factual question[,]" *id.*, the undisputed facts here demonstrate that Ms. Freed did not act willfully and wantonly. She merely collected DNA pursuant to a court order, originally requested by Plaintiff. The record is devoid of any "element of evil." *Moody*, 885 P.2d at 205.

by the Bent County Department of Social Services. Exh. D, ¶¶ 1–2. When a court enters an order for genetic testing to determine paternity, counties locate the individual and submit a request for DNA collection to LabCorp. *Id.* ¶¶ 7–8. In cases where the individual is located at BCCF, LabCorp directs the request to BCCF, and BCCF delivers the request to the facility's medical unit. *Id.* ¶ 10. The BCCF medical unit then contacts Ms. Freed to collect the sample. *Id.* ¶ 11. Pursuant to that process (and the underlying court order), Ms. Freed collected the buccal swabs from Plaintiff. On this evidence, no reasonable person can say that Ms. Freed acted outside the scope of her employment. In other words, there is no genuine dispute of material fact that Ms. Freed obtained DNA from Plaintiff while performing the duties of her job. As such, the Court respectfully recommends a finding that CGIA immunity should apply to the tort claims against her.[5]

## CONCLUSION

Accordingly, the Court respectfully RECOMMENDS that Ms. Freed's Motion [filed October 14, 2021; ECF 110] be **GRANTED**. In doing so, the Court respectfully recommends finding Ms. Freed entitled to qualified immunity on the Section 1983 claims against her and entering summary judgment in her favor.[6]

---

[5] Because the Court recommends finding Plaintiff's state law claims barred by the CGIA, the Court does not address the parties' alternative arguments regarding these claims.

[6] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).

Respectfully submitted this 21st day of December, 2021, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge