IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 20-cv-03495-PAB-STV

DARUS WILKINS,

     Plaintiff,

v.

JOHN PALOMINO, et al.,

     Defendants.

---

## ORDER

---

This matter comes before the Court on the Recommendation of United States

Magistrate Judge [Docket No. 324].  The Recommendation addresses Defendants'

Motion for Summary Judgement [Docket No. 309].  The Court has jurisdiction pursuant

to 28 U.S.C. § 1331.

## I.  BACKGROUND

The undisputed facts are set forth in the magistrate judge's recommendation,

Docket No. 324 at 2-6, and the parties do not raise any factual objections to the

recommendation.  The Court adopts the undisputed facts for the purposes of ruling on

the objection.

On November 25, 2025, plaintiff Darus Wilkins filed this action, pro se.  Docket

No. 1.  Plaintiff's claims arise out of actions taken by various prison officials at Bent

County Correctional Facility to get plaintiff to take a buccal swab for purposes of a

paternity test.  *See generally* Docket No. 104.  On January 25, 2022, Magistrate Judge

Michael E. Hegarty issued an order appointing pro bono counsel for plaintiff.  Docket

No. 157.  Attorney Alan D. Schindler was selected as pro bono counsel on October 26, 2023.  Docket No. 243.

The remaining defendants in this action are John Palomino, Chris Chavez, Cara Kennedy, Brent Pierce, Luke Holland, Nita Hunt, and Mr. Smith.  Plaintiff brings six state law claims, and claims under 42 U.S.C. § 1983 for violations of his Fourth, Fifth, and Eighth Amendment rights.[1]  Docket No. 104 at 5-26, ¶¶ 1-133.  On May 30, 2025, defendants filed a motion for summary judgment.  Docket No. 309.  On November 19, 2025, Magistrate Judge Scott T. Varholak issued a recommendation to grant in part and deny in part the motion for summary judgment.  Docket No. 324.  On December 8, 2025, defendants filed a timely objection to the November 19, 2025 recommendation. Docket No. 327.  Plaintiff filed a response.  Docket No. 328.

## II.  LEGAL STANDARD

### A.  Objections to the Magistrate Judge Recommendation

The Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  An objection is "proper" if it is both timely and specific.  *United States v. One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996) ("*One Parcel*").  A specific objection "enables the district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute."  *Id*.

In the absence of an objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate.  *See Summers v. Utah*, 927

---

[1] Plaintiff also brings a claim entitled "Cruel and Unusual Punishment" which alleges deliberate indifference to medical care.  Docket No. 104 at 22-24, ¶¶ 108-118. However, all parties against whom this claim was asserted have either been dismissed from the case or were never served.

F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). The Court therefore reviews the non-objected to portions of a recommendation to confirm there is "no clear error on the face of the record." Fed. R. Civ. P. 72(b), Advisory Committee Notes. This standard of review is something less than a "clearly erroneous" or "contrary to law" standard of review, Fed. R. Civ. P. 72(a), which in turn is less than a de novo review. Fed. R. Civ. P. 72(b).

### B. Motion for Summary Judgment

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). A movant who bears the burden at trial must submit evidence to establish the essential elements of its claim. *Harper v. Mancos Sch. Dist. RE-6*, 837 F. Supp. 2d 1211, 1217 (D. Colo. 2011).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of

evidence for the nonmovant on an essential element of the nonmovant's claim."
*Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## III. ANALYSIS

The magistrate judge recommends that the motion for summary judgment be granted as to plaintiff's state law claims, granted as to all claims against defendant Smith, and granted as to the Eighth Amendment claim against defendant Hunt. Docket No. 324 at 27. The magistrate judge recommends that the motion be denied as to all other claims against all other defendants. *Id.* The recommendation notes, in a footnote, that the parties' briefing did not address the due process claim, and that the parties should be prepared to discuss whether the claim remains active during the final pretrial conference. *Id.* at 7-8 n.2. Defendants object, arguing that they are entitled to summary judgment on plaintiff's Fourth and Eighth Amendment claims, and that plaintiff abandoned his due process claim. Docket No. 327. Plaintiff does not object to the partial grant of summary judgment, and requests that the Court "adopt the

4

Recommendation of United States Magistrate Judge Varholak without modification."
Docket No. 328 at 8.

### A. Fourth Amendment

Defendants argue that they are entitled to summary judgment on the Fourth
Amendment claim because their seizure was reasonable and because they did not
personally participate in the seizure of plaintiff's DNA.  Docket No. 327 at 2-7.

#### 1. *Reasonableness*

The magistrate judge recommends that summary judgment be denied as to the
Fourth Amendment claim because plaintiff's privacy rights outweigh the government's
interest in conducting a DNA search.  Docket No. 324 at 18-21.  The recommendation
concludes that the state court order is invalid and does not render the seizure of
plaintiff's DNA reasonable.  *Id.* at 21-22.  Furthermore, the recommendation finds that a
reasonable jury could consider defendants' failure to abide by Colorado Department of
Correction ("CDOC") Administrative Regulation No. 300-24, coupled with their
unwillingness to read the single paragraph state court order, *id.* at 23 n.9, to determine
that the seizure was unreasonable.  *Id.* at 23-24.

Defendants state that it is irrelevant whether or not the state court order is invalid;
rather, what matters is whether defendants reasonably believed the state court order
was valid under the totality of the circumstances.  Docket No. 327 at 3-4.  Defendants
further argue that any failure to "study and understand the state court order" and any
failure to follow CDOC Administrative Regulation No. 300-24 cannot establish more
than negligence.  *Id.* at 4-6.

The Fourth Amendment provides that, "[t]he right of the people to be secure in
their persons, houses, papers, and effects, against unreasonable searches and

5

seizures, shall not be violated." U.S. Const. amend. IV. "The ultimate touchstone of the

Fourth Amendment is reasonableness." *Banks v. United States*, 490 F.3d 1178, 1183

(10th Cir. 2007) (citation and internal quotations omitted). "The test of reasonableness

under the Fourth Amendment is not capable of precise definition or mechanical

application." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). "In each case it requires a

balancing of the need for the particular search against the invasion of personal rights

that the search entails." *Id.* "[P]ersons imprisoned for crime enjoy many protections of

the Constitution." *Hudson v. Palmer*, 468 U.S. 517, 524 (1984). However,

"imprisonment carries with it the circumscription or loss of many significant rights." *Id.*

"The curtailment of certain rights is necessary, as a practical matter, to accommodate a

myriad of 'institutional needs and objectives' of prison facilities, chief among which is

internal security. *Id.* (internal citations omitted).

"[U]sing a buccal swab on the inner tissues of a person's cheek in order to obtain

DNA samples is a search" under the Fourth Amendment." *Maryland v King*, 569 U.S.

435, 446 (2013). This is true regardless of whether the individual is incarcerated. *See*

*id.* (describing how the use of a buccal swab on a prisoner constitutes a search under

the Fourth Amendment). Nevertheless, obtaining DNA samples from inmates can be

reasonable in some cases, "in light of an inmate's diminished privacy rights, the minimal

intrusion involved, and the legitimate government interest in using DNA to investigate

and prosecute crimes." *Shaffer v. Saffle*, 148 F.3d 1180, 1181 (10th Cir. 1998).

In *Banks*, 490 F.3d at 1184, the Tenth Circuit analyzed the constitutionality of a

statute which required felons to submit a DNA sample in order to build a DNA database.

The court noted that in past cases analyzing similar statutes, it applied the Supreme

6

Court's totality-of-the-circumstances test.  *Id.* at 1185-1187 (citing *Boling v. Romer*, 101

F.3d 1336, 1339 (10th Cir. 1996); *Schlicher v. (NFN) Pepters, I & I*, 103 F.3d 940, 942

(10th Cir. 1996); *Shaffer*, 148 F.3d at 1181).  "The Supreme Court has described the

totality-of-the-circumstances test as one where 'the reasonableness of a search is

determined by assessing, on the one hand, the degree to which it intrudes upon an

individual's privacy, and on the other, the degree to which it is needed for the promotion

of legitimate governmental interests.'"  *Id.* at 1184 (quoting *United States v. Knights*, 534

U.S. 112, 119-20 (2001)).  Applying the *Knights* totality-of-the circumstances test to the

statute at issue in *Banks*, the court stated that it must "balance the degree to which DNA

profiling intrudes upon the Plaintiffs' privacy . . . against the significance of the

governmental interests served by DNA profiling."  *Id.* at 1185.  The Tenth Circuit has

found there to be significant government interests "in accurately identifying offenders,

solving past and future crimes, and combating recidivism."  *Id.* at 1193.  These interests

were found to outweigh the "relatively small" privacy invasion caused by saliva draws,

particularly considering that felons have "lesser privacy interests than do ordinary

citizens."  *Id.*

        In this case, plaintiff's status as a prisoner also means he has "lesser privacy

interests," and the privacy invasion of a saliva draw would similarly be "relatively small."

However, unlike in *Banks*, there are no significant governmental interests which

outweigh plaintiff's privacy rights.  As the recommendation observes, "Defendants have

not asserted any penological interest to support the forcible taking of the buccal swab,

nor is there any obvious penological interest.  In fact, Defendants assert no interest

whatsoever in Plaintiff's DNA sample."  Docket No. 324 at 21.  The recommendation

further notes that, unlike in *Banks*, "[t]he test had nothing to do with solving crimes, identifying an offender, or combatting recidivism. Rather, it was Plaintiff, through counsel, who had requested the DNA test related to a state court proceeding in which Plaintiff was not charged with or suspected of any criminal activity." *Id.* The Court agrees. Plaintiff himself requested this DNA test in a state court proceeding related to a paternity dispute. *Id.* at 2-3. The Court finds that any possible governmental interest in this context does not outweigh plaintiff's privacy rights, even considering those privacy rights are diminished.

In their objection to the denial of summary judgment on the Fourth Amendment claim, defendants ignore the balancing test altogether, and do not assert a government interest in obtaining the sample.[2] Docket No. 327 at 2-7. Instead, defendants argue that the state court order rendered the search reasonable. *Id.* at 3-4. The recommendation notes that the state court order provided "a particular location and date upon which the DNA testing was to occur." Docket No. 324 at 22. Therefore, the recommendation finds that the state court order was invalid at the time the DNA swab was obtained because "the test occurred months after the deadline and at a different location." *Id.* Defendants, however, argue that "the Recommendation mistakenly focuses on whether the state court order was valid . . . , instead of whether it was

---

[2] When objecting to the denial of summary judgment on the Eighth Amendment claim, defendants assert a penological interest in not making Virginia Freed—the person collecting the DNA sample—return to the prison to collect the DNA sample at another time. Docket No. 327 at 10-11. Defendants do not raise this argument in their objection to the Fourth Amendment claim, so the Court need not address it. *See One Parcel*, 73 F.3d at 1059. However, even if the Court were to consider this purported interest in the Fourth Amendment context, an interest in conserving Ms. Freed's time has nothing to do with the reasons for plaintiff's diminished privacy interests. His incarceration was coincidental in regard to the paternity test.

reasonable for the Defendants to believe it was valid." Docket No. 327 at 3. Defendants provide no caselaw supporting the proposition that summary judgment on a Fourth Amendment claim is warranted if defendants reasonably believed that a state court order authorized the seizure. *See id.* at 3-4. Even if this is the standard, summary judgment would still be inappropriate.

Defendants argue that it was reasonable for them to believe the state court order was valid because Ms. Freed—a Bent County employee—twice came to the facility to take plaintiff's DNA sample pursuant to the state court order. *Id.* at 3-4. Defendants assert that "Ms. Freed, not the defendants, was responsible for determining the Order's validity." *Id.* at 4. However, as the recommendation points out, CDOC Administrative Regulation No. 300-24 states that when a CDOC facility "is notified of a request for a [DNA] collection, the request will immediately be directed to the facility OIG investigator if necessary. . . . The Office of Legal Services *will be notified to ensure the validity of the court order*." Docket No. 324 at 22 (citation omitted). Thus, pursuant to CDOC's regulation, it was the facility, not Ms. Freed, who was responsible for determining the state court order's validity. The recommendation notes that it is undisputed the defendants were not aware of the DNA regulation. *Id.* at 23. Moreover, the recommendation observes that the state court order is only a single paragraph, which states that: "The Court hereby Orders genetic testing be completed for [plaintiff] at his current facility, Jefferson County Detention Center, before May 20, 2019, for the purpose of determining whether [plaintiff] is the biological father of the subject minor child." *Id.* at 22. Thus, the recommendation finds that "had Defendants bothered to read the single paragraph Order they would have at least been on notice that the Order

9

had expired." *Id.* at 23.  The Court finds that a reasonable jury, in considering these two facts, could find that it was not reasonable for defendants to believe the state court order was valid.

Defendants, however, argue that their failure to read and follow CDOC Administrative Regulation No. 300-24 and their failure to study the state court order can only establish negligence, which is insufficient for a viable Forth Amendment claim. Docket No. 327 at 3-6.  While it is true that "failing to follow prison policy is not a constitutional violation *in and of itself*," *George, on behalf of Bradshaw v. Beaver Cnty., by & through Beaver Cnty. Bd. of Commissioners*, 32 F.4th 1246, 1250 (10th Cir. 2022) (emphasis added), failure to follow policy may still be a factor in determining unreasonableness, along with other factors.  Moreover, defendants' failure to understand the single paragraph state court order can establish a Fourth Amendment violation if it is determined to be objectively unreasonable.  *See Heien v. North Carolina*, 574 U.S. 54, 66 (2014) ("The Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes—whether of fact or of law—must be *objectively* reasonable.  We do not examine the subjective understanding of the particular officer involved.").  Thus, the state court order does not make defendants' seizure reasonable as a matter of law, and the Court will overrule defendants' objection.

### 2. *Personal Participation*[3]

The magistrate judge recommends not granting summary judgment based on the argument that defendants did not personally participate in the conduct forming the basis of plaintiff's Fourth Amendment claim.[4]  Docket No. 324 at 8-16.  Specifically, the recommendation finds that there is a genuine issue of fact as to whether defendants "set in motion" the series of events that they knew or should have known would cause others to deprive plaintiff of his Fourth Amendment rights.  *Id.* at 9.

Defendants object, arguing that Ms. Freed is the one who collected plaintiff's DNA, not defendants.  Docket No. 327 at 4-5.  According to defendants, "[f]acilitating the DNA collection by Ms. Freed cannot be a separate Fourth Amendment violation by Defendants . . . because Ms. Freed actually conducted the seizure."  *Id.*  As an alternative argument, defendants assert that defendant Palomino made the decision to proceed with collecting the DNA sample, and thus the other defendants could not have caused a violation of the Fourth Amendment.  *Id.* at 6-7.

A claim arising under 42 U.S.C. § 1983 requires: "(1) deprivation of a federally protected right by (2) an actor acting under color of state law."  *VDARE Found. v. City of*

---

[3] In their motion for summary judgment, defendants' argument regarding personal participation does not differentiate between the Fourth Amendment claim and the Eighth Amendment claim.  Docket No. 309 at 6-7.  The magistrate judge analyzes personal participation in the conduct underlying the Fourth Amendment and Eighth Amendment claims together.  Docket No. 324 at 8-17.  However, in their objection, defendants raise separate arguments regarding personal participation in the conduct underlying the Fourth Amendment claim and personal participation in the conduct underlying the Eighth Amendment claim.  Docket No. 327 at 4-7, 12-14.  The Court will analyze the Fourth Amendment personal participation arguments and the Eighth Amendment personal participation arguments separately.

[4] The magistrate judge does, however, recommend granting summary judgment as to the claims against defendant Smith based on his lack of personal participation.  Docket No. 324 at 16-17.

*Colorado Springs*, 11 F.4th 1151, 1160 (10th Cir. 2021) (citation omitted).  "[P]ersonal

participation is an essential allegation in a § 1983 claim."  *Mitchell v. Maynard*, 80 F.3d

1433, 1441 (10th Cir. 1996).  However, "[p]ersonal involvement is not limited solely to

situations where a defendant violates a plaintiff's rights by physically placing hands on

him."  *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008).  A defendant can be

liable under § 1983 if "the defendant set in motion a series of events that the defendant

knew or reasonably should have known would cause others to deprive the plaintiff of

[his] constitutional rights."  *Mink v. Knox*, 613 F.3d 995, 1001 (10th Cir. 2010) (citation

omitted).

Defendants argue that only Ms. Freed can be liable under the Fourth

Amendment because she is the one who conducted the seizure.  Docket No. 327 at 4-5.

However, "an officer need not execute a search personally to be liable" for a Fourth

Amendment claim under § 1983.  *Poolaw v. Marcantel*, 565 F.3d 721, 732 (10th Cir.

2009).  Liability can be established if defendants "set in motion a series of events that

[they] knew or reasonably should have known would cause others to deprive" plaintiff of

his Fourth Amendment rights.  *Mink*, 613 F.3d at 1001.  The other defendants,

therefore, do not escape liability merely because they did not personally collect the DNA

sample.

Defendants alternatively argue that it was defendant Palomino who ordered the

collection of the DNA sample, and thus the other defendants could not have caused a

violation of the Fourth Amendment.  Docket No. 327 at 6-7.  Regarding defendant

Kennedy, the recommendation emphasizes plaintiff's testimony that, prior to the

collection of DNA, defendant Kennedy stated: "If you don't want to give it to us, put his

12

fucking ass on the ground.  We'll just fucking take it with force."  Docket No. 324 at 10.

Defendants argue that defendant Kennedy's reaction "could have contributed to the use

of force," but state that it is illogical to conclude it led to collecting plaintiff's DNA.[5]

Docket No. 327 at 7.  The Court disagrees.  Defendant Kennedy stating that, if plaintiff

does not want to give a DNA sample, "[w]e'll just fucking take it with force" could have

set in motion a series of events that defendant Kennedy should have known would

cause Ms. Freed to ultimately take the DNA sample.  Specifically, a reasonable jury

could find that defendants might not have forced plaintiff to have his DNA sample

collected if defendant Kennedy did not state that defendants should take it by force.

Regarding defendant Hunt, the recommendation notes that "Defendant Hunt was

the first official to receive the court Order and personally scheduled Plaintiff for a DNA

test sampling based on that Order."  Docket No. 324 at 12.  Moreover, plaintiff testified

that "Defendant Hunt threatened to use force if Plaintiff were to refuse to submit to the

DNA test."  *Id.*  The recommendation reasons that, "[h]ad Defendant Hunt closely read

the Order prior to scheduling, she would have known that it indicated that the DNA test

was to be completed two months prior at a different facility."  *Id.*  The Court finds that a

reasonable jury could find that scheduling the DNA test set in motion the series of

events that led plaintiff's DNA to being collected.  Moreover, the Court finds that a

reasonable jury could conclude that defendant Hunt should have known this would lead

to a constitutional violation because the state court order, by its plain language, was no

longer valid.

---

[5] Defendants later dispute that defendant Kennedy's actions led to the use of force.  Docket No. 327 at 12-13.

Regarding defendant Pierce, the recommendation notes that plaintiff testified that he "believe[d] Mr. Pierce [wa]s one of the ones that was holding [Plaintiff] down in the office" to forcibly collect his DNA. *Id.* at 15 (citation omitted). "Plaintiff testified that he was 'almost certain' but not 'a hundred percent sure' because he was on the floor, handcuffed, with his head held down." *Id.* (citation omitted). The recommendation determines that "Plaintiff's testimony is based on more than mere speculation—Plaintiff did not have to visualize Defendant Pierce to experience other sensations which would lead him to believe Defendant Pierce was the person on top of him." *Id.* at 16. The Court finds that plaintiff's testimony creates a disputed fact as to whether defendant Pierce personally participated in the unlawful seizure by holding plaintiff down while Ms. Freed collected his DNA. Thus, the Court will overrule defendants' objection.

### B. Eighth Amendment

Defendants object to the magistrate judge's recommendation denying summary judgment on the Eighth Amendment excessive force claim, arguing that it incorrectly held that defendants subjectively acted with a sufficiently culpable state of mind and that defendants did not personally participate in the underlying events giving rise to the claim. Docket No. 327 at 7-14.

#### 1. Subjective Analysis

The magistrate judge recommends that summary judgment be denied as to the Eighth Amendment claim because there is a genuine issue as to whether defendants used force solely for the purpose of causing harm. Docket No. 324 at 24-27. The recommendation notes that, when there is no legitimate penological purpose for using force, it constitutes sufficient evidence that the force was used for the purpose of causing harm. *Id.* at 26. The recommendation finds that it is disputed whether force

was necessary to ensure plaintiff's safety, noting that plaintiff was never physically aggressive when his DNA sample was collected. *Id.* The recommendation also finds that defendant Kennedy's use of vulgar language could be considered by a jury to be indicative of force being used out of anger, rather than being used for a legitimate reason. *Id.* at 26-27.

Defendants argue that the recommendation improperly considered their subjective intent, claiming that "[i]t is undisputed from the Defendants' perspective, their intent in using force was to ensure the safety of the Plaintiff, Ms. Freed, themselves and the facility while Ms. Freed took the DNA sample from Plaintiff." Docket No. 327 at 7. Defendants also claim that the recommendation did not properly consider how defendants' positions as prison officials would influence their view of whether force was necessary. *Id.* Finally, defendants argue that the recommendation failed to account for the institutional penological needs explaining their actions. *Id.* at 10.

The Eighth Amendment provides that "cruel and unusual punishments" shall not be inflicted. U.S. Const. amend. VIII. "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment." *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (internal quotations and citations omitted). "[A]n excessive force claim involves two prongs: (1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind." *Giron v. Corr. Corp. of Am.,* 191 F.3d 1281, 1289 (10th Cir. 1999) (internal quotations, alterations, and citation omitted). Here, defendants only object to the recommendation's finding on the subjective prong.

15

*See* Docket No. 327 at 7-12.  "The subjective element of an excessive force claim 'turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'"  *Giron*, 191 F.3d at 1289 (quoting *Whitely v. Albers*, 475 U.S. 312, 320-21 (1986)).  "Where no legitimate penological purpose can be inferred from a prison employee's alleged conduct, . . . the conduct itself constitutes sufficient evidence that force was used 'maliciously and sadistically for the very purpose of causing harm.'"[6]  *Id.* at 1290 (quoting *Whitely*, 475 U.S. at 320-21).

Defendants argue that it is undisputed that, "from the Defendants' perspective, their intent in using force was to ensure the safety of the Plaintiff, Ms. Freed, themselves and the facility while Ms. Freed took the DNA sample away from Plaintiff."  Docket No. 327 at 7.  Defendants state that ensuring safety is a legitimate penological purpose.  *Id.* at 10.  Defendants are incorrect that such a fact is undisputed.  Defendants cite several facts from their summary judgment motion's "Statement of Undisputed Facts," *id.* at 7, but the only fact they cite which involves safety is ¶ 28, which states that "Plaintiff, already handcuffed, was ordered to go to his knees and lay on his stomach for the safety of Ms. Freed, which Plaintiff complied with."  Docket No.

---

[6] Defendants argue that the recommendation erred in applying this proposition to the facts of this case.  Docket No. 327 at 11 n.4.  The facts of *Giron*, 191 F.3d at 1290, involve a prison guard who sexually abused an inmate.  Defendants argue that *Giron* is inapplicable because its facts are distinguishable.  Docket No. 327 at 11 n.4.  However, in *Giron*, 191 F.3d at 1290, the Tenth Circuit noted that its holding was not limited to sexual abuse, stating that, "[w]here no legitimate penological purpose can be inferred from a prison employee's alleged conduct, *including but not limited to sexual abuse or rape*, the conduct itself constitutes sufficient evidence that force was used 'maliciously and sadistically for the very purpose of causing harm.'" (quoting *Whitley*, 475 U.S. at 320-21) (emphasis added).

16

309 at 5, ¶ 28.  Contrary to defendants' assertion, this fact is disputed, with plaintiff

stating that it is "Denied" and explaining that "Mr. Wilkins was forced to the floor by

multiple officers while in the office."  Docket No. 314 at 5, ¶ 28.  Thus, it is not

undisputed that defendants subjectively acted with the intent to ensure safety.  In fact,

as the recommendation notes, other evidence could lead to the opposite conclusion.

> Defendants argue that any force they used against Plaintiff was "to ensure
> the safety of Plaintiff and the others around him, including Ms. Freed,
> while also trying to get Plaintiff to comply with the DNA collection."  [#309
> at 10] However, the evidence provided by both parties create a genuine
> dispute of material fact on this matter.  It is undisputed that Plaintiff was
> never physically aggressive during the July 25 encounter.  [#314 at 5 ¶ 21]
> Indeed, Defendants' own statement of facts states that "Plaintiff did not
> resist the DNA collection" and "[a]s Plaintiff ultimately complied with the
> DNA collection, the officers did not have to use force to collect the DNA
> sample."  [#309 at 5 ¶¶ 30-31]  Yet Plaintiff testified that, despite never
> being physically aggressive, he was handcuffed, pushed to the floor, and
> held by his neck and head to the floor by Defendants.  [#314-2 at 13-14
> (44:23-45:20), 17 (49:13-25)]  Plaintiff further testified that Defendant
> Kennedy was being vulgar and yelled to "Fucking put [Plaintiff] down" [*id.*
> at 13 (44:23-25)], suggesting actions taken in anger as opposed to the
> application of reasonable and necessary force.

Docket No. 324 at 26-27.  The Court agrees that the referenced facts create a genuine

issue of material fact as to whether defendants were acting to ensure safety or were

instead acting solely for the purpose of causing harm.  Considering that defendants took

these actions in their positions as correctional officers does not change this conclusion.

There is a disputed issue of fact that defendants used force, despite the fact that

defendants state the use of force was unnecessary.  A reasonable jury could conclude

that using force unnecessarily indicates that the use of force was malicious, even from

the perspective of a correctional officer.

Defendants assert a purported penological purpose in ensuring Ms. Freed did not

have to return to the prison in order to collect the DNA sample at another time.  This

17

interest essentially amounts to the convenience of Ms. Freed.  Courts have found legitimate penological interests in, for example, the "[s]afety and security of inmates and facility staff."  *Herbert v. Ruffini*, 2021 WL 948832, at *3 (D. Colo. Mar. 12, 2021).  Ms. Freed's convenience does not rise to this level.  The convenience of Ms. Freed involves the convenience in taking a DNA sample, but without a proper court order.  The Court finds that facilitating the convenience of such an action does not constitute a legitimate penological purpose.  Accordingly, there is a genuine issue of fact as to whether defendants acted with the subjective intent to maliciously cause harm, and the Court will overrule the objection.

### 2. Personal Participation

The magistrate judge recommends denying summary judgment based on the argument that defendant Kennedy and defendant Pierce did not personally participate in the conduct forming the basis of plaintiff's Eighth Amendment claim.  Docket No. 324 at 10-12, 14-16.  As with personal participation under the Fourth Amendment, the recommendation finds that there is a genuine issue of fact as to whether defendant Kennedy and defendant Pierce "set in motion" the series of events that they knew or should have known would cause others to deprive plaintiff of his Fourth Amendment rights.  *Id.*

Defendants argue that defendant Kennedy only yelled vulgar threats, which is insufficient to establish an Eighth Amendment violation.  Docket No. 327 at 12.  Moreover, defendants argue that the magistrate judge inappropriately relied on *Harper v. Rose*, 2012 WL 1150463 (D. Utah Apr. 5, 2012), for the proposition that an officer

18

who threatens to use force can set in motion a series of events which actually leads to the use of force. *Id* at 12-13.

First, defendants' argument that a threat cannot establish an Eighth Amendment violation misconstrues the recommendation's holding. The recommendation did not determine that defendant Kennedy's threat constituted excessive force, but rather that a reasonable jury could find that defendant Kennedy's statements escalated the situation, setting in motion the events which led to the excessive use of force. Docket No. 324 at 10-12. Thus, this argument is unavailing.

Next, defendants are correct that *Harper* is distinguishable from the facts of this case. Like defendant Kennedy, the defendant in *Harper* threatened to use force against the plaintiff. *Harper*, 2012 WL 1150463, at *6. The *Harper* court found that a reasonable jury could find that this threat set in motion a series of events which led to the other defendants' constitutional violations. *Id.* However, unlike defendant Kennedy, the defendant in *Harper* also ordered that the plaintiff be tased. *Id.* But defendants here fail to acknowledge that the recommendation explicitly states that "[t]he facts in this case are not identical to *Harper*." Docket No. 324 at 11. The recommendation merely uses *Harper* as evidence that "[o]ther courts have found that, when an officer overreacts and unnecessarily escalates a situation, the officer may be found to have set in motion a series of events culminating in an alleged use of excessive force." *Id.* The recommendation does not rely on *Harper*—a District of Utah case—as binding precedent. *See id.* at 11-12. Rather, the recommendation notes that "Plaintiff testified that he was on the floor with his back towards Defendant Kennedy holding his hands behind his back when Defendant Kennedy began threatening to throw Plaintiff to the

ground to get the DNA sample by force." *Id.* at 11.  The recommendation states that,

"[a]fter this, Plaintiff testified that Defendant Kennedy personally called for extra help

from 'bigger staff,' even though Plaintiff was not acting in a threatening manner."[7]  *Id.*

From these facts the recommendation concludes that a reasonable jury could find that

such statements were an overreaction to plaintiff's verbal refusal to submit to a DNA

test for the purpose of determining paternity rights, and that this overreaction led to the

use of excessive force.  *Id.* at 11-12.  The Court agrees, and finds that a reasonable jury

could find that defendant Kennedy threatening to get the DNA sample by force set in

motions a series of events which led to other defendants getting the DNA sample by

force.

Next, defendants argue that the recommendation erred in refusing to recommend

granting summary judgment to defendant Pierce.  Docket No. 327 at 13.  Defendants

then state that defendant Pierce's action are "insufficient to demonstrate the specific

actions of Defendant Pierce towards Plaintiff were sadistic and malicious under the

applicable Eighth Amendment subjective standard."  *Id.*  However, as to defendant

Pierce, the recommendation examined whether he personally participated in the

conduct, not whether his actions satisfied the subjective prong of the excessive force

analysis.  *See* Docket No. 324 at 14-16.  Moreover, defendants' arguments in their

motion for summary judgment regarding the Eighth Amendment claim against

defendant Pierce focused exclusively on his personal participation, not on whether his

actions were sadistic and malicious.  *See* Docket No. 309 at 6-7.  In fact, defendants do

---

[7] Similar to defendant Kennedy calling for help from additional staff in this case, Docket No. 324 at 11, the defendant in *Harper*, 2012 WL 1150463, at *6, called dispatch for help in controlling the plaintiff.

not mention defendant Pierce under the subheading "Eighth Amendment" at all.  *See id.*
at 8-11.  "Issues raised for the first time in objections to the magistrate judge's
recommendation are deemed waived."  *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th
Cir. 1996); *see also Maurer v. Idaho Dep't of Corr.*, 799 F. App'x 612, 614 n.1 (10th Cir.
2020) (unpublished).  Thus, the Court will not address defendants' argument that
defendant Pierce did not act maliciously or sadistically.  And to the extent this objection
could be construed as an objection to the recommendation's holding that a reasonable
jury could find defendant Pierce personally participated in the Eighth Amendment
violation, the Court is not convinced.  The recommendation notes that plaintiff testified
as to his belief that defendant Pierce held him down during the excessive force incident.
Docket No. 324 at 14-15.  The Court finds that a reasonable jury could find that this
testimony shows defendant Pierce personally participated in the conduct which
allegedly deprived plaintiff of his constitutional rights.  Accordingly, the Court will
overrule defendants' objection.

### C. <u>Fifth Amendment</u>

The recommendation notes, in a footnote, that plaintiff brings a due process
claim based on alleged retaliation.  *Id.* at 7-8 n.2.  The recommendation further notes
that the parties "do not address the due process claim in their briefing on the instant
Motion."  *Id.*  The recommendation states that, "if the instant Recommendation is
adopted, the parties shall be prepared to discuss at the final pretrial conference whether
a retaliation claim remains active in this case and, if so, the parties against whom the
claim is brought."  *Id.*

Defendants, however, argue that plaintiff abandoned the claim by not raising it in
his response to defendants' motion for summary judgment.  Docket No. 327 at 14.  In

support of this argument, defendants point to cases which the recommendation cites. *Id.* The problem, however, is that these cases do not stand for the proposition that a plaintiff must address claims in a summary judgment response even if the defendants do raise them in their motion. Rather, they stand for the proposition that, when a defendant raises an argument in a motion for summary judgment, a failure to address that argument typically constitutes abandonment of the claim. *See Pittman v. Wakefield & Assocs., Inc.*, No. 16-cv-02695-RBJ-KMT, 2017 WL 5593287, at *5 (D. Colo. Nov. 21, 2017) (citing *Hinsdale v. City of Liberal*, 19 F. App'x 749, 768-69 (10th Cir. 2001) (unpublished)); (*Hutton v. Woodall*, 70 F.Supp.3d 1235, 1239 (D. Colo. 2014)) (finding that a plaintiff abandoned her claim by failing to address the defendant's argument regarding that claim); *Todd v. USAA Gen. Indem. Co.*, 713 F.Supp.3d 1088, 1097 (D. Colo. 2024) (same); *Shelter Gen. Ins. Co. v. Goodyear Tire & Rubbery Co.*, No. 20-cv-02160-PAB-SKC, 2023 WL 2648014, at *5 (D. Colo. Mar. 27, 2023) (same). Here, defendants raised no arguments in their motion for summary judgment addressing the retaliation claim. *See generally* Docket No. 309; *see also* Docket No. 324 at 7-8 n.2 (stating that "the parties do not address the due process claim in their briefing on the instant Motion."). Thus, plaintiff has not abandoned his due process claim, and the Court will overrule the objection.

### D. <u>Unobjected to Portions of the Recommendation</u>

The magistrate judge recommends granting summary judgment as to all of plaintiff's state law claims and as to all claims against defendant Smith. Docket No. 324 at 27. The magistrate judge also recommends granting summary judgment as to the Eighth Amendment claim against defendant Hunt. *Id.* Plaintiff did not file an objection to the recommendation. The Court has reviewed the non-objected to portions of the

recommendation to satisfy itself that there is "no clear error on the face of the record."

Fed. R. Civ. P. 72(b), Advisory Committee Notes.  Based on this review, the Court has

concluded that these portions of the recommendation are a correct application of the

facts and the law and will accept the magistrate judge's recommendation.

## IV.  CONCLUSION

Therefore, it is

**ORDERED** that the Recommendation of United States Magistrate Judge [Docket

No. 324] is **ACCEPTED**.  It is further

**ORDERED** that Defendants' Objection to Recommendation of United States

Magistrate Judge [Docket No. 327] is **OVERRULED**.  It is further

**ORDERED** that Defendants' Motion for Summary Judgment [Docket No. 309] is

**GRANTED in part** and **DENIED in part**.  It is further

**ORDERED** that plaintiff's state law claims are **DISMISSED with prejudice**.  It is

further

**ORDERED** that plaintiff's Eighth Amendment claim against defendant Nita Hunt

is **DISMISSED with prejudice**.  It is further

**ORDERED** that plaintiff's claims against defendant Smith are **DISMISSED with

prejudice**.  It is further

**ORDERED** that defendant Smith is **DISMISSED** as a party to this action.

DATED March 27, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge

23